24-656 (Con)
*United States v. Salvador*

# Ｕｎｉｔｅｄ Ｓｔａｔｅｓ Ｃｏｕｒｔ ｏｆ Ａｐｐｅａｌｓ
# Ｆｏｒ ｔｈｅ Ｓｅｃｏｎｄ Ｃｉｒｃｕｉｔ

August Term 2025
Argued: January 8, 2026
Decided: July 7, 2026

No. 24-656

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

ANTONIO SALVADOR, AKA PANTRO,

*Defendant-Appellant.*[*][†]

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

[†] This opinion resolves only Defendant-Appellant Antonio Salvador's appeal, No. 24-656 (Con). Defendant-Appellant Melvi Amador-Rios's appeal, No. 23-7930(L), will be resolved separately.

1

Appeal from the United States District Court
for the Eastern District of New York
No. 18-cr-398, Rachel P. Kovner, *Judge*.

Before:     LIVINGSTON, NARDINI, and NATHAN, *Circuit Judges*.

Defendant-Appellant Antonio Salvador appeals from a judgment of the United States District Court for the Eastern District of New York (Kovner, *J.*) sentencing him to 210 months of imprisonment and three years of supervised release for assault in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3). One of the special conditions of Salvador's supervised release term requires him to "cooperate with and abide by all instructions of immigration authorities." On appeal, Salvador asks this Court to vacate that special condition. He argues that it is procedurally unreasonable, unconstitutionally vague, and impermissibly delegates the court's sentencing authority. Applying plain error review, we reject these arguments and **AFFIRM** the judgment of the district court.

———

ANNA M. SKOTKO, Skotko Law PLLC, New York, NY, *for Defendant-Appellant*.

RAFFAELA BELIZAIRE (Anthony Bagnuola, Nadia E. Moore, Anna L. Karamigios, *on the brief*), Assistant United States Attorneys, *for* Joseph Nocella, Jr., United States

Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*.

———

NATHAN, *Circuit Judge*:

Defendant-Appellant Antonio Salvador pled guilty to assault in aid of racketeering for his role in a gang-related shooting. *See* 18 U.S.C. § 1959(a)(3). He was sentenced to 210 months in prison and three years of supervised release. One of the special conditions of that supervised release term—the "Immigration Authorities Condition"— requires Salvador, a noncitizen now facing presumptively mandatory removal, to "cooperate with and abide by all instructions of immigration authorities." App'x 67. He did not object to its imposition at sentencing.

On appeal, Salvador argues that the Immigration Authorities Condition should not have been imposed. Specifically, he argues that it is procedurally unreasonable and unconstitutionally vague, and that it impermissibly delegates sentencing authority to non-judicial officers. We review for plain error and conclude that the district court's reasons for imposing the condition were self-evident in the record, that the condition means what it says, and that it does not delegate any particular decision to a non-judicial officer. As a result, we **AFFIRM** the judgment of the district court.

## BACKGROUND

Antonio Salvador is a citizen of El Salvador and a member of La Mara Salvatrucha—a criminal street gang colloquially known as "MS-13." In 2016, Salvador met with junior MS-13 members on the

3

night they shot a rival gang member. He gave them gloves to handle the gun they used in the shooting and told them how to use it.

Two years later, Salvador and four other MS-13 members were charged in an eighteen-count racketeering indictment for a string of violent crimes committed between 2016 and 2018. Salvador, for his part, pled guilty to assault in aid of racketeering. *See* 18 U.S.C. § 1959(a)(3).

Nine months before Salvador's sentencing hearing, the Probation Department prepared a Presentence Investigation Report (PSR). In it, Probation recommended a sentence of 180 months in prison, plus three years of supervised release. Probation also recommended three special conditions of supervised release. One of those special conditions—the "Immigration Authorities Condition"—requires Salvador to "cooperate with and abide by all instructions of immigration authorities." App'x 67.

Salvador filed one written objection to the PSR: he argued that Probation had miscalculated his offense level. But Salvador did not object to any of the proposed conditions of his supervised release. Later, when Salvador submitted his sentencing memorandum, he asked the district court to take into account the immigration consequences of his sentence—namely, that he would be placed in ICE custody and deported at the end of it. There, too, Salvador did not object to any of the proposed conditions of his supervised release.

The district court sentenced Salvador two weeks later. During the sentencing hearing, the court acknowledged Probation's sentencing recommendation from the PSR, including the three special conditions of supervised release. It confirmed that Salvador had

4

reviewed the PSR with his counsel. And it adopted the revised Guidelines range that Salvador and the Government had proposed.

The district court then sentenced Salvador to 210 months in prison and three years of supervised release. The court's explanation for its Guidelines-range sentence was straightforward: Salvador had committed a "really extremely serious crime" that was "part of a pattern of criminal activity in the gang." App'x 58. And while Salvador had been "recruited pretty aggressively" into that gang, the "choices" he made once in it were choices that he did not have to make. *Id.* at 57–58.

The district court did not otherwise explain its decision to impose a term of supervised release, nor any special conditions of it. Instead, the district court simply adopted the term of supervised release and the three special conditions that were proposed in the PSR—the Immigration Authorities Condition among them. The district court then asked if Salvador knew of "any legal reason" why the sentence could not be imposed as stated. App'x 59. Salvador responded that he did not.

This appeal followed.[1]

---

[1] The Government moved to dismiss Salvador's appeal. It argued that, under the terms of Salvador's plea agreement, Salvador had waived his right to appeal a sentence of 240 months or less, and Salvador was sentenced to 240 months in prison. But Salvador's appeal waiver does not cover the term or conditions of his supervised release, and Salvador's arguments on appeal are limited to one special condition of his supervised release. *Cf. United States v. Reyes-Arzate*, 91 F.4th 616, 622 (2d Cir. 2024). So Salvador's appeal waiver does not bar his appeal. The Government's motion to dismiss is denied accordingly.

**DISCUSSION**

Salvador challenges the Immigration Authorities Condition on three grounds. He argues that (1) the condition is procedurally unreasonable, because the district court did not state its reasons for imposing it; (2) the condition is vague and overbroad; and (3) the condition impermissibly delegates sentencing authority to the immigration authorities. We disagree.

## I. Ripeness

At the outset, the Government insists that the Immigration Authorities Condition is not ripe for our review because Salvador is likely to be deported before his term of supervised release begins. "Ripeness is a constitutional prerequisite to the exercise of jurisdiction by federal courts." *United States v. Traficante*, 966 F.3d 99, 106 (2d Cir. 2020) (citation modified). Accordingly, before we can consider whether the Immigration Authorities Condition was properly imposed, we must "assure ourselves" that the issues Salvador raises "are ripe for our consideration." *United States v. Villafane-Lozada*, 973 F.3d 147, 150 (2d Cir. 2020). Specifically, we must ask whether "the issues are fit for judicial consideration," and whether "withholding [that] consideration will cause substantial hardship to the parties." *United States v. Balon*, 384 F.3d 38, 46 (2d Cir. 2004) (citation modified). We are adequately assured here.

Occasionally, we have dismissed challenges to a special condition as unripe when the condition implicates "rapidly evolving technologies such as computers and software" that might look different when a term of supervised release begins. *United States v. Birkedahl*, 973 F.3d 49, 55 (2d Cir. 2020). That is because, in those cases,

6

the question of whether the condition will "unnecessarily deprive[]" a supervisee of his liberty depends on the state of the technology used to effectuate it. *Balon*, 384 F.3d at 46. And what that state will be in one or five or ten years is "a matter of fact beyond the prescience of this court." *Id.* Those challenges are not "fit for judicial review" accordingly. *Id.* (citation modified).

But when a challenge to a condition of supervised release involves a "pure question of law," we "regularly allow" that challenge to proceed years or even decades before the defendant begins his term of supervision. *Villafane-Lozada*, 973 F.3d at 151–52 (citation modified). That is true even when the condition relies on the same kinds of changing technologies that might otherwise make some claims related to it unripe. *See United States v. Jimenez*, 175 F.4th 341, 354 (2d Cir. 2026). For example: in *Villafane-Lozada*, we entertained an impermissible delegation challenge to a condition of supervised release that would have required the supervisee to submit to computerized lie detector tests some six years later. 973 F.3d at 150–51. In so doing, we explained that the impermissible delegation claim was not "conditioned on future events," like how reliable those tests might one day become. *Id.* at 152. It just contested "the *already* realized delegation of judicial power" to a non-judicial officer—there, the fact that the supervisee's probation officer could choose whether to administer an old-school polygraph or its modern digital counterpart. *Id.* at 151.

Likewise, in *United States v. Reeves*, we considered a due process vagueness challenge to a special condition of supervised release without ever invoking ripeness at all. *See* 591 F.3d 77, 80–83 (2d Cir.

7

2010). There, the condition required the supervisee to "notify the Probation Department when he establishes a significant romantic relationship," and to tell that significant romantic partner about his criminal history. *Id.* at 80. The question was how a supervisee would know that a particular relationship was "significant" enough such that he had to tell his probation officer about it. *Id.* at 81. That ripeness was absent from our resulting constitutional analysis makes intuitive sense: the vagueness inquiry asks "what the condition actually means," and whether the supervisee subject to it might reasonably be able to ascertain that meaning. *Id.* at 80–81. We do not need to know anything about how the condition will actually be operationalized to answer that question. *Cf. United States v. Kunz*, 68 F.4th 748, 763–64 (2d Cir. 2023). We just need the words on the page.

So too here. Salvador's appeal asks whether the Immigration Authorities Condition is unconstitutionally vague, and whether it impermissibly delegates sentencing authority to the immigration authorities. It presents the same pure questions of law at issue in *Villafane-Lozada* and *Reeves*. And it is therefore ripe for our review.

## II.     Waiver

Ordinarily, when a defendant challenges the conditions of his supervised release for the first time on appeal, we review for plain error. *United States v. Arguedas*, 134 F.4th 54, 68 (2d Cir. 2025) (citation omitted). Under plain error review, we may reverse the imposition of a condition of supervised release only if "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court

proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Napout*, 963 F.3d 163, 183 (2d Cir. 2020)).

The Government proposes a different approach. It insists that Salvador has affirmatively waived any challenge to the conditions of his supervised release by failing to object to them before or during his sentencing. He has not.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation modified). It differs from forfeiture, which is "the failure to make the timely assertion of a right[.]" *Id.* For criminal defendants like Salvador, the difference between waiver and forfeiture is an important one: forfeited legal claims are nevertheless reviewable for plain error under Federal Rule of Criminal Procedure 52(b). *Id.* Waived legal claims are not. *United States v. Yu-Leung*, 51 F.3d 1116, 1121 (2d Cir. 1995).[2]

To determine whether a defendant's failure to object to a purported legal error before the district court constitutes waiver or forfeiture, we look to what the surrounding circumstances say about the defendant's reasons for doing so. After all, "a waiver of a right requires some affirmative signal of abandonment." *Hunter v. United States*, 608 U.S. ----, 2026 WL 1751815, at *6 (2026) (citation modified). So when looking for that signal, we ask whether the "totality of the circumstances" demonstrates that the defendant's failure to object

---

[2] Of course, some rights cannot be waived at all. *See United States v. Pachay*, 711 F.2d 488, 490–93 (2d Cir. 1983). Claims involving those rights are not at issue in this case.

was "intentional." *United States v. Williams*, 930 F.3d 44, 64–65 (2d Cir. 2019). If not—if the reason a defendant does not make an objection is mere "mistake or oversight"—the claim is forfeited, not waived, and we may review it for plain error. *United States v. Spruill*, 808 F.3d 585, 596 (2d Cir. 2015).

Evidence of that intentionality can look different from case to case. Take the most extreme example first. In some cases, we might find the requisite intentionality if the defendant "actively solicit[ed]" the circumstances he later challenges on appeal. *See id.* at 597. That is why a defendant who proposes the very language of the special condition he now challenges has, in fact, waived any right to appeal that condition. *Cf. United States v. Teague*, 443 F.3d 1310, 1314, 1316–18 (10th Cir. 2006). We might say that he got what he bargained for, and he cannot now try to "undo the consequences of that decision on appeal." *United States v. Graham*, 51 F.4th 67, 78 (2d Cir. 2022).[3]

In other cases involving challenges to conditions of supervised release, a defendant's intentional decision not to object might look less overtly self-inflicted, but still tactical. For example: a defendant who lodges written objections with the district court to some conditions of his supervised release but not others might be said to have waived any right to appeal the ones to which he did not object. The Seventh Circuit has held the same. *United States v. Tjader*, 927 F.3d 483, 485 (7th Cir. 2019). In those cases, we might conclude that the defendant

---

[3] Though our case law has not always been consistent on the point, we might also call invited-error-type scenarios like this one "true waiver." *See United States v. Quinones*, 511 F.3d 289, 321 (2d Cir. 2007); *Spruill*, 808 F.3d at 598.

had a strategic reason to focus his arguments on one condition at the expense of others—and that he should be held to that strategic decision on appeal. *See id.* Importantly, however, strategic does not have to mean "beneficial." The point is to determine whether a defendant's legal right was intentionally relinquished—not whether it was a good idea for him to do so. *See Spruill*, 808 F.3d at 599.

And still in other cases, that intentional decision might look like a considered and affirmative choice not to object. Accordingly, if a district court "specifically ask[s]" during a sentencing hearing whether the defendant has any objections to the special conditions of supervised release imposed, and the defendant explicitly "confirm[s]" that he does not, it may be reasonable to conclude that the defendant has waived his right to appeal those conditions. *See Williams*, 930 F.3d at 65; *Spruill*, 808 F.3d at 599. In those circumstances, we might say that the defendant was given a clear opportunity to register his objections to the very condition of supervised release he now appeals and he declined it, so the objection is waived. *See United States v. Agrawal*, 726 F.3d 235, 259 (2d Cir. 2013).

All of this is to say that there are many ways a defendant may waive his right to appeal the conditions of his supervised release. But failing to make written or oral objections to *any* of the conditions of supervised release below and "[s]taying silent" when those conditions are imposed but not asked about at sentencing is not one of them. *See Hunter*, 608 U.S. ----, 2026 WL 1751815, at *6. That is forfeiture.

Forfeiture is what happened here. Salvador did not file written objections to any of the conditions of his supervised release below.

11

He did not make any oral objections to them, either. The sentencing court did not specifically ask Salvador whether he had any objections to those conditions—it asked only, as a general matter, whether Salvador knew of "any legal reason" why his entire sentence could not be imposed as stated. App'x 59; *cf. United States v. Hinds*, 770 F.3d 658, 665 (7th Cir. 2014). And Salvador played no role in the drafting of the Immigration Authorities Condition. He simply did not bring it up at all—and he was not prompted to do so. *Cf. Hunter*, 608 U.S. ----, 2026 WL 1751815 at *6. Under those circumstances, we cannot say that Salvador intended to relinquish his right to challenge the special conditions of his supervised release. Instead, he forfeited his objections, and we therefore review the now-challenged condition for plain error. *See Arguedas*, 134 F.4th at 68.

### III. Plain Error

Salvador's challenges to the Immigration Authorities Condition are thus neither unripe nor waived. Nevertheless, on plain error review, they fail on the merits.

### A. Procedural Reasonableness

Consider Salvador's procedural reasonableness arguments first. District courts are required to "state on the record" their reasons for imposing a special condition of supervised release. *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018). Below, the district court did not explicitly state its reasons for imposing a term of supervised release or any special conditions of it. It also did not explain why supervised release was warranted for a deportable noncitizen like Salvador despite the Sentencing Commission's policy statements to the contrary. As a result, Salvador argues that we should vacate the

12

Immigration Authorities Condition.[4] We disagree on both fronts, and we take each argument in turn.

The point of the statement-of-reasons requirement is to make sure that there is a "reasonable relationship" between the Section 3553(a) sentencing factors and the special condition at issue. *United States v. Sims*, 92 F.4th 115, 124 (2d Cir. 2024) (quoting *United States v. Haverkamp*, 958 F.3d 145, 151 (2d Cir. 2020)). But that requirement is not a straitjacket. District courts are not required to "pick through every condition and explain, point-by-point, how each was responsive to the offending conduct." *Kunz*, 68 F.4th at 760. Instead, the special conditions statement-of-reasons requirement is "a subset of the broader requirement to state in open court the reasons for the particular sentence." *United States v. Lawrence*, 139 F.4th 115, 124 (2d Cir. 2025) (citation modified). So long as district courts explain "the overall reasons for [their] sentencing decision," the statement-of-reasons requirement is usually satisfied as to the terms and conditions of supervised release, too. *United States v. Thompson*, 143 F.4th 169, 178 (2d Cir. 2025).

Moreover, this Court can affirm a district court's decision to impose a special condition of supervised release if the court's reasoning is "self-evident in the record." *United States v. Lewis*, 125 F.4th 69, 75 (2d Cir. 2025) (quoting *Betts*, 886 F.3d at 202). The district court's reasoning is self-evident here.

---

[4] These same procedural unreasonableness arguments would also apply to Salvador's term of supervised release and the other conditions of it. But Salvador challenges only the Immigration Authorities Condition on appeal, so we focus our analysis on that condition.

The need for the sentence imposed to "protect the public from further crimes of the defendant" is one of the Section 3553(a) factors. 18 U.S.C. § 3553(a)(2)(C). So are the "nature and circumstances of the offense[.]" *Id.* § 3553(a)(1). And as the district court explained, Salvador pled guilty to "a really extremely serious crime" that was "part of a pattern of criminal activity in [a] gang." App'x 58. Junior gang members came to Salvador for advice about how to use a gun in the shooting they planned to commit that night, and Salvador gave it to them. He also gave them gloves to help them cover their tracks. The district court's reasons for imposing the sentence it did—the dangerous circumstances of Salvador's offense and the need to protect the public—are therefore clear. *Cf. Thompson*, 143 F.4th at 178–79.

Salvador argues that the district court's decision to impose supervised release is nevertheless at odds with the Sentencing Commission's policy statements. Indeed, the Commission "ordinarily" recommends against imposing *any* term of supervised release for deportable noncitizens. U.S.S.G. § 5D1.1(c). And Salvador is an undocumented immigrant who will face "presumptively mandatory" deportation at the end of his prison sentence. Appellant's Br. 12. So Salvador argues that the district court should not have imposed a term of supervised release—let alone the Immigration Authorities Condition along with it.

That argument, too, misses the mark. District courts may impose a term of supervised release on deportable noncitizens if so doing would "provide an added measure of deterrence and protection based on the facts and circumstances of a particular case."

14

U.S.S.G. § 5D1.1, cmt. 9.  But district courts do not need to actually state that a particular term of supervised release or the special conditions of it is intended to provide that additional deterrence and protection.  *United States v. Alvarado*, 720 F.3d 153, 158 (2d Cir. 2013).  So long as the need for extra deterrence and protection is apparent in the record, district courts do not need to cite U.S.S.G. § 5D1.1 at all.  *See id.* at 159; *see, e.g.*, *United States v. Ellis*, No. 21-946, 2022 WL 711074, at *2 (2d Cir. Mar. 10, 2022) (summary order).

Those criteria are satisfied here.  Again: Salvador committed multiple crimes as a member of MS-13.  He also coached his fellow gang members about how to use a gun to shoot someone.  That alone underscores the need for added deterrence and protection should Salvador be present in the United States after his prison sentence.  And the Immigration Authorities Condition goes hand-in-hand with that term of supervised release.  It anticipates that, if Salvador is released or allowed to re-enter the United States after his likely removal, he will have contact with not only the Probation Department but also U.S. immigration officials.  So imposing the Immigration Authorities Condition without more explanation was not a procedurally unreasonable decision.

### B. Vagueness

Salvador next argues that the Immigration Authorities Condition is unconstitutionally vague.  He contends that the Condition does not clarify which country's immigration authorities he must cooperate with, nor whether he must abide their "unlawful" instructions, too.  Appellant's Br. 13.  Again, we disagree.

The due process vagueness inquiry is an objective one.

15

Generally, we ask whether a particular condition of supervised release is "sufficiently clear to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited[.]" *United States v. Green*, 618 F.3d 120, 122 (2d Cir. 2010) (citation modified). Conditions of supervised release therefore need not "spell out every last, self-evident detail" in order to pass constitutional muster. *United States v. Johnson*, 446 F.3d 272, 280 (2d Cir. 2006) (citation modified). They just cannot be "so vague that 'men of common intelligence must necessarily guess at [their] meaning and differ as to [their] application.'" *United States v. MacMillen*, 544 F.3d 71, 76 (2d Cir. 2008) (quoting *United States v. Simmons*, 343 F.3d 72, 81 (2d Cir. 2003)).

Here, the import of the Immigration Authorities Condition is clear. As discussed, Salvador is an undocumented immigrant who faces "presumptively mandatory" deportation from the United States as a result of his criminal conviction. Appellant's Br. 12. He is therefore likely to have contact with the U.S. immigration authorities at the end of his prison sentence. And the Immigration Authorities Condition thus reasonably informs Salvador that he is to follow the instructions of those authorities. It also tells him that he would violate the condition by, for example, refusing to leave the United States after the U.S. immigration authorities order him to do so.

Indeed, the Immigration Authorities Condition looks a lot like Standard Condition 13, which requires supervisees to "follow the instructions of the probation officer related to the conditions of supervision." U.S.S.G. § 5B1.3(c); *see* App'x 66. That condition, too, was imposed as part of Salvador's sentence, but Salvador does not argue that it is unconstitutionally vague because it does not specify

16

whether it refers to U.S. probation officers or those of another country. Instead, common sense dictates that both provisions are referring to U.S. authorities. Likewise, Salvador does not argue that Standard Condition 13 is unconstitutionally vague because it directs supervisees to follow all instructions of their probation officers. We do not see any reason why the Immigration Authorities Condition is any different. It is therefore not unconstitutionally vague.

### C. Delegation

Finally, Salvador insists that the Immigration Authorities Condition gives the immigration authorities the power to issue unlimited instructions to him, and to determine whether or not he has "cooperated" with those instructions. Appellant's Br. 15. That power, Salvador says, amounts to an impermissible delegation of the district court's sentencing authority.

Salvador is right in one limited respect: only the sentencing court may "fashion a sentence's terms," *United States v. Carlineo*, 998 F.3d 533, 538 (2d Cir. 2021), because "the ultimate decision of whether to restrict the defendant's liberty" rests with that court, *United States v. Degroate*, 940 F.3d 167, 177 (2d Cir. 2019). But the Immigration Authorities Condition does not delegate any particular sentencing decision to the immigration authorities. For example: it does not give them the power to choose whether a supervisee must undergo inpatient or outpatient drug treatment. *See United States v. Matta*, 777 F.3d 116, 123 (2d Cir. 2015). Nor does it make Salvador's liberty contingent on the discretion of those authorities. *See id.* Like Standard Condition 13, which is regularly imposed for supervisees and not challenged here, it just requires Salvador to follow the

"instructions" of some authority responsible for supervising him. *Cf.* U.S.S.G. § 5B1.3(c); App'x 66. Again, we see no reason to treat the two conditions differently, and Salvador cites no authority suggesting that we should. This argument therefore fails under plain error review.

Finally, the Immigration Authorities Condition does not require Salvador's probation officer or sentencing court to "defer[] to" the immigration authorities' judgment about whether or not Salvador has cooperated with their instructions. Appellant's Br. 16. We are aware of no authority that suggests that they would. Instead, as with any alleged violation of supervised release, if Probation has reason to think that Salvador has violated the Immigration Authorities Condition, the district court will hold a hearing to determine whether or not he has. *See* 18 U.S.C. §§ 3583(e), 3606; *see, e.g.*, *United States v. Fernandez*, 152 F.4th 124, 131 (2d Cir. 2025). Either way, the power to craft the extent of Salvador's punishment will remain with the district court. So the district court did not plainly err in imposing the Immigration Authorities Condition.

## CONCLUSION

For the foregoing reasons, the judgment of the United States District Court for the Eastern District of New York is **AFFIRMED**.

18